No. 13-16359

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
————————————

**JAMES GRINOLS; ROBERT ODDEN; EDWARD NOONAN;
KEITH JUDD; THOMAS GREGORY MACLERAN**,

PLAINTIFFS-APPELLANTS,

V.

**ELECTORAL COLLEGE; PRESIDENT OF THE SENATE;
GOVERNOR OF CALIFORNIA; SECRETARY OF STATE OF
CALIFORNIA; U.S. CONGRESS; BARACK OBAMA,**

DEFENDANTS-APPELLEES.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
D.C. NO. 2:12-CV-02997 MCE/DAD
————————————

**FEDERAL DEFENDANTS-APPELLEES' ANSWERING BRIEF**
————————————

BENJAMIN B. WAGNER
United States Attorney
EDWARD A. OLSEN
Assistant U.S. Attorney
Eastern District of California
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2821
Attorneys for Federal
Defendants-Appellees

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................. 1

STATEMENT OF THE CASE............................................................. 2

STATEMENT OF FACTS .................................................................. 3

    A.  The Complaint .................................................................. 3

    B.  Motion for a Temporary Restraining Order ....................... 6

    C.  The Amended Complaint ................................................... 8

    D.  The District Court's Order of Dismissal ............................ 9

SUMMARY OF ARGUMENT ........................................................... 13

ARGUMENT ..................................................................................... 14

    A.  Standard of Review ........................................................... 14

    B.  Plaintiffs-Appellants Lacked Standing to Sue ................. 14

    C.  Plaintiffs-Appellants' Claims Were Moot ......................... 26

    D.  Plaintiffs-Appellants' Claims Were Barred by
        the Political Question Doctrine .......................................... 31

    E.  Plaintiffs-Appellants' Claims Against Congress
        Were Barred by the Speech or Debate Clause .................. 38

    F.  Plaintiffs-Appellants' Miscellaneous Arguments
        Lack Merit ......................................................................... 42

        1.  The District Court Did Not Ignore "The
            Precedents".................................................................. 42

i

a. *Fulani v. Hogsett* ...................................................... 42

b. *Cleaver v. Jordan* ..................................................... 44

c. *Peace and Freedom Party v. Bowen* ........................ 45

2. Representation of the Electoral College and Congress ........................................................................ 46

3. The District Court's Authority to Issue Declaratory Relief ......................................................... 48

4. "Part 2" of Amended Complaint .................................. 50

5. Plaintiffs-Appellants' Witnesses .................................. 52

6. Whether Barack Obama Exists as a Legal Entity ............................................................................ 53

7. Plaintiffs-Appellants' Request for Default Judgment ....................................................................... 53

8. 5 U.S.C. § 3328 ........................................................... 55

CONCLUSION ................................................................................ 56

STATEMENT OF RELATED CASES ............................................. 57

CERTIFICATE OF COMPLIANCE ................................................ 58

CERTIFICATE OF SERVICE ......................................................... 59

# TABLE OF AUTHORITIES

## CASES

Aetna Life Ins. Co. v. Haworth,
    300 U.S. 227 (1937) ................................................................. 29

Ankeny v. Governor of Indiana,
    916 N.E.2d 678 (Ind. Ct. App. 2009) ................................... 7

Annamarie ? Last Name Uncertain v. Electors for Kentucky,
    2012 WL 5398565 (W.D. Ky. Nov. 5, 2012) .................................... 20

Baker v. Carr,
    369 U.S. 186 (1962) .............................................................. 31, 32

Barnett v. Obama,
    2009 WL 3861788 (C.D. Cal. Oct. 29, 2009) .................................... 8

Barry v. United States ex rel. Cunningham,
    279 U.S. 597 (1929) ................................................................. 37

Berg v. Obama,
    574 F. Supp. 2d 509 (E.D. Pa. 2008) ......................................... 7, 19

Berg v. Obama,
    586 F.3d 234 (3d Cir. 2009) ..................................................... 18, 19

Bogan v. Scott-Harris,
    523 U.S. 44 (1998) ................................................................. 41

Burroughs v. United States,
    290 U.S. 534 (1934) ................................................................. 48

Cleaver v. Jordan,
    393 U.S. 810 (1968) ........................................................ 45

Clinton v. Jones,
    520 U.S. 681 (1997) ........................................................ 49

Cohen v. Obama,
    2008 WL 5191864 (D.D.C. Dec. 11, 2008) ...................... 20

Consumers Union of United States, Inc. v. Periodical
Correspondents' Assoc.,
    515 F.2d 1341 (D.C. Cir. 1975) ...................................... 37

Cook v. Good,
    2009 WL 2163535 (M.D. Ga. July 16, 2009) .................... 8

Corrie v. Caterpillar,
    503 F.3d 974 (9th Cir. 2007) .......................................... 31

Doe v. McMillan,
    412 U.S. 306 (1973) ................................................. 39, 40

Drake v. Obama,
    664 F.3d 774 (9th Cir. 2011) ................................. passim

Eastland v. U.S. Servicemen's Fund,
    421 U.S. 491 (1975) ................................................. 39, 40

Fairchild v. Hughes,
    258 U.S. 126 (1922) ........................................................ 17

Friends of the Earth, Inc. v. Bergland,
    576 F.2d 1377 (9th Cir. 1978) ........................................ 26

Fulani v. Hogsett,
    917 F.2d 1028 (7th Cir. 1991) ................................... 42, 44

Gottlieb v. Federal Election Commission,
   143 F.3d 618 (D.C. Cir. 1998)........................................................25

Gravel v. United States,
   408 U.S. 606 (1972) ............................................................... passim

Hollander v. McCain,
   566 F. Supp. 2d 63 (D.N.H. 2008) ...................................... 19, 21, 26

Hollister v. Soetoro,
   601 F. Supp. 2d 179 (D.D.C. 2009)......................................................7

Hollman v. United States Electoral College,
   2009 WL 1114146 (W.D. Ark. Apr. 24, 2009) .................................47

Jones v. Bush,
   122 F. Supp. 2d 713 (N.D. Tex. 2000) .............................................19

Kercher v. Obama,
   669 F. Supp. 2d 477 (D.N.J. 2009) ..................................................18

Kerchner v. Obama,
   612 F.3d 204 (3d Cir. 2010).........................................................7, 18

Keyes v. Bowen,
   117 Cal. Rptr. 3d 207 (Cal. Ct. App. 2010) ...........................8, 37, 46

Lance v. Coffman,
   549 U.S. 437(2007) .........................................................................16

Lewis v. Cont'l Bank Corp.,
   494 U.S. 472 (1990) ........................................................................27

Lewis v. Lynn,
   236 F.3d 766 (5th Cir. 2001) ......................................................54, 55

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) ............................................................... passim

Marbury v. Madison,
    5 U.S. (1 Cranch) 137 (1803) ........................................................ 31

Maya v. Centex Corp.,
    658 F.3d 1060 (9th Cir. 2011) ..................................................... 16

Metzenbaum v. FERC,
    675 F.2d 1282(D.C. Cir. 1982)..................................................... 37

Murphy v. Hunt,
    455 U.S. 478(1982) ...................................................................... 27

Newdow v. Bush,
    391 F. Supp. 2d 95 (D.D.C. 2005)................................................ 29

Nixon v. United States,
    506 U.S. 224 (1993) ..................................................................... 37

No GWEN Alliance of Lane County, Inc. v. Aldridge,
    855 F.2d 1380 (9th Cir. 1988) ..................................................... 31

Nw. Acceptance Corp. v. Lynnwood Equip., Inc.,
    841 F.2d 918 (9th Cir. 1988) ....................................................... 51

Nw. Envtl. Def. Ctr. v. Gordon,
    849 F.2d 1241 (9th Cir. 1988) ................................................ 26, 31

Paige v. Vermont,,
    2013 Vt. 105 (2013) ...................................................................... 29

Peace & Freedom Party v. Bowen,
    912 F. Supp. 2d 905 (E.D. Cal. 2012)........................................... 45

Preiser v. Newkirk,
    422 U.S. 395 (1975) ...................................................................... 26

Rhodes v. MacDonald,
    2009 WL 2997605 (M.D. Ga. Sept. 16, 2009)....................................8

Riethmiller v. Electors for New Jersey,
    2013 WL 1501868 (D.N.J. Apr. 11, 2013) .......................................19

Robinson v. Bowen,
    567 F. Supp. 2d 1144 (N.D. Cal. 2008) ........................ 26, 34, 35, 36

Schlesinger v. Reservists Comm. to Stop the War,
    418 U.S. 208 (1974) ................................................................. 16, 17

Schmidt v. Tacoma Police Dep't,
    2011 WL 247322 (W.D. Wash. Jan. 25, 2011) ...............................54

Sibley v. Alexander,
    916 F. Supp. 2d 58 (D.D.C. 2013)............................................ 18, 24

Sibley v. Obama,
    866 F. Supp. 2d 17 (D.D.C. 2012)....................................................24

Sibley v. Obama,
    2012 WL 6603088 (D.C. Cir. Dec. 6, 2012) ....................................24

Sibley v. Obama,
    2012 WL 6625813 (D.D.C. Dec. 19, 2012),......................................19

St. Claire v. City of Chico,
    880 F.2d 199 (9th Cir. 1989) ..........................................................15

Steel Co. v. Citizens for a Better Env't,
    523 U.S 83 (1998) ...........................................................................53

Steffel v. Thompson,
    415 U.S. 452 (1974) ........................................................................26

Supreme Court of Virginia v. Consumers Union of U.S., Inc.,
    446 U.S. 719 (1980) ........................................................................41

Taitz v. Astrue,
   806 F. Supp. 2d 214 (D.D.C. 2011)....................................................7

Taitz v. Obama,
   707 F. Supp. 2d 1 (D.D.C. 2010) ....................................................8

Taitz v. Ruemmler,
   2011 WL 4916936 (D.D.C. Oct. 17, 2011) ........................................7

Tenney v. Brandhove,
   341 U.S. 367 (1951) ...................................................................39

United Investors Life Ins. v. Waddell & Reed, Inc.,
   360 F.3d 960 (9th Cir. 2004) ........................................................14

United States v. Nixon,
   418 U.S. 683 (1974) ...................................................................49

United States v. Nixon,
   816 F.2d 1022 (5th Cir. 1987) ......................................................49

United States v. Renzi,
   651 F.3d 1012 (9th Cir. 2011) ......................................................39

United States v. Richardson,
   418 U.S. 166 (1974) ...................................................................17

United States v. White,
   454 F.2d 435 (7th Cir. 1971) ........................................................51

Warth v. Seldin,
   422 U.S. 490 (1975) ...................................................................16

Wrotnowski v. Bysiewicz,
   958 A.2d 709 (Conn. 2008) ...........................................................7

STATUTES

3 U.S.C. § 15................................................................................ passim
3 U.S.C. § 6...................................................................................... 27
3 U.S.C. §§ 7-8................................................................................ 27
3 U.S.C. §§ 9-11.............................................................................. 28
5 U.S.C. § 3328........................................................................ 55, 56
5 U.S.C. § 3328(a)(2) ..................................................................... 56
28 U.S.C. § 1291.............................................................................. 1
42 U.S.C. § 1983............................................................................ 43


U.S. Const. amend. XII.................................................................... 40
U.S. Const. amend. XX .................................................................... 35

U.S. Const. Art. 1................................................................... 13, 38

California Elections Code § 2150........................................... 1, 2, 9, 13

RULES

Fed. R. Civ. P. 4(e) ....................................................................... 54
Fed. R. App. P. 4(a)(1)(B)................................................................ 1
Fed. R. Civ. P. 12(b)(1)......................................................... 14, 16

OTHER AUTHORITIES

10A Federal Practice and Procedure §§ 2682 .................................... 55

Beverly L. Ross & William Josephson,
The Electoral College and the Popular Vote,
    121 J.L. & Pol. 665 (1996) ................................................................ 36

## STATEMENT OF JURISDICTION

Plaintiffs-Appellants appeal from a judgment of the United States District Court for the Eastern District of California dismissing their action challenging President Barack Obama's eligibility to run for the Office of the President of the United States in 2012 and alleging violations of California Elections Code § 2150. The district court entered judgment on May 23, 2013. Federal Defendants' Supplemental Excerpts of Record ("FED-SER") 3. Plaintiffs-Appellants filed a Notice of Appeal on June 22, 2013, within sixty days of entry of the district court's judgment. FED-SER 1. *See* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether plaintiffs-appellants lacked standing to sue under Article III of the United States Constitution.

2.    Whether the district court properly concluded that plaintiffs-appellants' claims were moot.

3.     Whether the district court properly concluded that plaintiffs-appellants' claims were barred by the political question doctrine.

4.     Whether the district court properly concluded that plaintiffs-appellants' claims against Congress were barred by the Speech or Debate Clause.

## STATEMENT OF THE CASE

Plaintiffs-Appellants filed their action in the United States District Court for the Eastern District of California on December 13, 2012, seeking a declaration that President Barack Obama was ineligible to run for President of the United States in 2012 because he was not a natural born citizen within the meaning of Article II, section 1, clause 5 of the United States Constitution.  Plaintiffs-Appellants also alleged violations of California Elections Code § 2150 by the Governor of California and the California Secretary of State. The district court denied plaintiffs-appellants' motion for a temporary restraining order on January  16, 2013, and dismissed the action on May 23, 2013, for lack of subject matter jurisdiction.  This appeal followed.

2

## STATEMENT OF FACTS

### A.    The Complaint

Plaintiffs-Appellants – three candidates for the Office of President in 2012 and two electors – filed the underlying action on December 13, 2012, seeking a declaration that President Barack Obama was ineligible to run for the Office of the President in 2012 under Article II, section 1, clause 5 of the United States Constitution, which provides:  "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President."  FED-SER 169-199.

Plaintiffs-Appellants contended that President Obama was born in Kenya and is a citizen of Indonesia, thus making him ineligible to seek the Office of the President.  Plaintiffs-Appellants also asserted that President Obama used a stolen Connecticut social security number, a forged short-form birth certificate, a forged long-form birth certificate, and a forged selective service certificate as proof that he is a natural born citizen of the United States.  Plaintiffs-Appellants attached to their Complaint the results of an

investigation by a "Cold Case Posse" convened by Sheriff Joe Arpaio of Maricopa County, Arizona, and a hodge podge of affidavits and internet print-outs which, in plaintiffs-appellants' view, establish that the President is not a natural born citizen.

Plaintiffs-Appellants also sought the following injunctive relief in their Complaint:  (1) a stay of the Governor of California's preparation and delivery of Certificates of Ascertainment, which are lists of the names of the electors chosen by each state to serve in the Electoral College; (2) a stay of the meeting of the Electoral College, at which electors of each state cast their votes for President; (3) a stay of the delivery of the electors' sealed votes to the President of the Senate; and (4) a stay of the President of the Senate's opening of the sealed electoral votes in the joint session of the Senate and the House of Representatives on January 4, 2013, his reading of the votes to the joint session, and his announcement at the joint session of which person had been elected President of the United States.

The Complaint listed three candidates for President as plaintiffs – Edward Noonan (alleged to have won the American Independent Party's presidential primary in California), Thomas

Gregory MacLeran (alleged to have been a candidate for President), and Keith Judd (alleged to have been a Democratic Party candidate for President). The Complaint did not allege that any of these candidates were actually on the ballot in any state in the General Election on November 6, 2012, but asserted that Keith Judd, a federal inmate, received over 40,000 votes in West Virginia's 2012 Democratic Party Primary.

The Complaint also listed two electors as plaintiffs – James Grinols (alleged to have been a Republican Party elector) and Robert Odden (alleged to have been a Libertarian Party elector). The Complaint did not allege from which state either of these individuals was designated by their respective parties to be electors or to which Presidential candidate they were pledged.

Plaintiffs-Appellants listed the following defendants in their Complaint: Barack Obama in his capacity as "Candidate for the U.S. President in 2012," the Electoral College, the Congress, the Vice President of the United States in his capacity as President of the Senate, the Governor of California, and the California Secretary of State.

**B.     Motion for a Temporary Restraining Order**

Plaintiffs-Appellants filed a motion for a temporary restraining order on December 20, 2012, asking the district court to enjoin the following: (1) the Governor of California's preparation and delivery of Certificates of Ascertainment; (2) the meeting of the Electoral College; (3) the delivery of the electors' sealed votes to the President of the Senate; (4) the President of the Senate's opening of the states' sealed electoral votes in the joint session of the Senate and the House of Representatives on January 4, 2013, his reading of the votes to the joint session, and his announcement at the joint session of which person had been elected President of the United States; and (5) the President's taking the oath of office on Inauguration Day.  FED-SER 133-168.

The district court denied plaintiff-appellants' motion for a temporary restraining order orally on January 3, 2013, and in a written order on January 16, 2013, on the ground that their claim that President Obama was not eligible to run for office and serve as President of the United States was barred by the political question doctrine.  FED-SER 37-49.  The court concluded that, when read

6

together, Article II, the Twelfth Amendment, and the Twentieth

Amendment "make it clear that the Constitution assigns to

Congress, and not the Courts, the responsibility of determining

whether a person is qualified to serve as President."  FED-SER 44.

The district court also observed that courts across the country have

uniformly rejected claims arising out of the allegation that President

Obama is ineligible to serve as President because his Hawaiian birth

certificate is allegedly fake or forged:  *Kerchner v. Obama*, 612 F.3d

204 (3d Cir. 2010); *Hollister v. Soetoro*, 601 F. Supp. 2d 179, 180

(D.D.C. 2009), *aff'd*, 368 F. App'x 154 (D.C. Cir. 2010) (per curiam);

*Berg v. Obama*, 574 F. Supp. 2d 509 (E.D. Pa. 2008), *aff'd*, 586 F.3d

234 (3d Cir. 2009); *Wrotnowski v. Bysiewicz*, 958 A.2d 709 (Conn.

2008); *Ankeny v. Governor of Indiana*, 916 N.E.2d 678 (Ind. Ct. App.

2009).  *Id.*

The district court also took note of the fact that each and every

one of plaintiffs-appellants' counsel's previous lawsuits arising out of

the allegation that President Obama is ineligible to serve as

President had failed.  *See Taitz v. Astrue*, 806 F. Supp. 2d 214

(D.D.C. 2011), *aff'd*, No. 11-5304, 2012 WL 1930959 (D.C. Cir. May

25, 2012); *Taitz v. Ruemmler*, No. 11-1421 (RCL), 2011 WL 4916936 (D.D.C. Oct. 17, 2011), *aff'd*, No. 11-5306, 2012 WL 1922284 (D.C. Cir. May 25, 2012) (per curiam); *Taitz v. Obama*, 707 F. Supp. 2d 1 (D.D.C. 2010), *reconsideration denied*, 754 F. Supp. 2d 57 (D.D.C. 2010); *Cook v. Good*, No. 4:09-cv-82 (CDL), 2009 WL 2163535 (M.D. Ga. July 16, 2009); *Rhodes v. MacDonald*, No. 4:09-cv-106 (CDL), 2009 WL 2997605 (M.D. Ga. Sept. 16, 2009); *Barnett v. Obama*, No. SACV 09-0082 DOC (ANx), 2009 WL 3861788 (C.D. Cal. Oct. 29, 2009), *aff'd sub nom. Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011), *cert. denied sub nom. Keyes v. Obama*, 132 S. Ct. 2748 (2012); *Keyes v. Bowen*, 117 Cal. Rptr. 3d 207, 216 (Cal. Ct. App. 2010) (upholding on appeal a Superior Court's ruling sustaining demurrers without leave to amend). *Id.*

## C.    The Amended Complaint

Plaintiffs-Appellants filed an Amended Complaint on February 11, 2013, which, in addition claiming that President Obama was ineligible to run as a candidate for the Office of the President, added a claim alleging that the Governor of California and the California Secretary of State violated California Elections Code § 2150 because

they "failed to take any action" on California voter registrations that did not list the voter's place of birth, were duplicates, or were submitted by voters who were over 100 years old.  FED-SER 109-128.

The Amended Complaint deleted the Vice President of the United States as a defendant and added Orly Taitz as a plaintiff in her capacity as a registered California voter and as a candidate for California Secretary of State in 2010 and for the United States Senate in 2012.  *Id.*

## D.    The District Court's Order of Dismissal

The district court dismissed the Amended Complaint on May 23, 2013, on a number of grounds.  FED-SER 4-29.  First, the court concluded that the question of whether President Obama is a natural born citizen is a political question that the judiciary cannot answer. The court held that, when read together, Article I, Sections 2 and 3, Article II, Section 1, the Twelfth Amendment, the Twentieth Amendment, and the Twenty-Fifth Amendment "make clear that the Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States."  FED-SER 14.  The court stated

that, "[a]s such, the question presented by Plaintiffs in this case –
whether President Obama may legitimately run for office and serve
as President – is a political question that the Court may not answer."
FED-SER 15.

Second, the district court determined that Edward Noonan
(alleged to have won the American Independent Party's presidential
primary in California), Thomas Gregory MacLeran (alleged to have
been a candidate for President), James Grinols (alleged to have been
a Republican Party elector) and Robert Odden (alleged to have been
a Libertarian Party elector) lacked standing to sue under Article III
of the Constitution because they raised only a generalized grievance
regarding an individual's eligibility to run for President – a grievance
shared in substantially equal measure by all citizens.  The district
court acknowledged that this Court has recognized a "competitive
standing" theory, but determined that:  (1) Noonan and MacLeran
"failed to demonstrate that they were President Obama's competitors
in the 2012 Presidential election or were otherwise personally
injured by President Obama's participation in the election" and (2)
"the alleged harm Grinols and Odden faced as disappointed potential

presidential electors is too far attenuated and vague to meet the particularized injury requirement imposed by the Supreme Court." FED-SER 19. The district court declined to issue a categorical ruling that Keith Judd – a federal inmate – did not have competitor standing in light of the fact that he allegedly received 40,000 votes in West Virginia's 2012 Democratic Party Primary. FED-SER 20.

Third, the district court found that plaintiffs-appellants' claims for injunctive relief were moot because all of the actions that they had sought to enjoin had already occurred by the time they filed their Amended Complaint: Governor Brown had prepared and delivered the Certificates of Attainment; the Electoral College had convened and the electors from each state had cast their votes for President; the Electoral College had delivered their sealed votes to the President of the Senate; Congress had counted the electoral votes at a joint session of Congress on January 4, 2013; Congress had declared President Obama the winner of the 2012 Presidential Election; and President Obama had been inaugurated and had begun his second term as President of the United States on January 20, 2013. FED-SER 21-24.

Fourth, the district court concluded that plaintiffs-appellants' claims for declaratory relief – that President Obama was not eligible as "a candidate for office" for President – was moot because President Obama was no longer a candidate for office, but was instead the sitting President of the United States serving a second and final term.  FED-SER 21-24.

Fifth, the district court concluded that plaintiffs-appellants' claims against Congress were barred by the Speech or Debate Clause of the United States Constitution because determining an individual's qualifications to serve as President of the United States and counting electoral votes fall comfortably within the "sphere of legitimate legislative activity."  FED-SER 25 (discussing U.S. Const. Art. 1, § 6, cl. 1 and *Gravel v. United States*, 408 U.S. 606, 624 (1972) (stating that whether the Speech or Debate Clause applies turns on whether the claims presented fall within the "sphere of legitimate legislative activity")).

Finally, the district court declined to exercise supplemental jurisdiction over plaintiffs-appellants' state-law claim against the Governor of California and the California Secretary of State for

violations of California Elections Code § 2150, and dismissed this state-law claim without prejudice.  FED-SER 26.

## SUMMARY OF ARGUMENT

The district court properly dismissed plaintiffs-appellants' claims for lack of subject matter jurisdiction for several independent reasons.  First, plaintiffs-appellants lacked standing to sue under Article III of the Constitution because they raised only a generalized grievance regarding an individual's eligibility to run for President – a grievance shared in substantially equal measure by all citizens.  Second, plaintiffs-appellants' claims were moot because all of the actions that plaintiffs-appellants sought to enjoin had already occurred by the time they filed their Amended Complaint and Barack Obama was no longer a "candidate for the U.S. President."  Third, plaintiffs-appellants' claims were barred by the political question doctrine because the Constitution assigns to Congress alone the responsibility to count electoral votes and to decide which electoral votes not to count.  Fourth, plaintiffs-appellants' claims against Congress were barred by the Speech or Debate Clause because the counting of electoral votes is within the "legitimate legislative

sphere" of Congress.  In addition, plaintiffs-appellants' laundry list of complaints regarding the district court's dismissal of their action is wholly without merit.

## ARGUMENT

### A.    Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a plaintiff bears the burden of proving that the court has subject matter jurisdiction to hear his or her claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court has an affirmative duty to ensure that it is acting within the scope of its jurisdictional authority.  *See United Investors Life Ins. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966 (9th Cir. 2004).  A court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of subject matter jurisdiction.  *See St. Claire v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

### B.    Plaintiffs-Appellants Lacked Standing to Sue

The district court properly concluded that plaintiff-appellants lacked standing to sue under Article III of the United States Constitution because they raised only a generalized claim of constitutional ineligibility for public office.

14

"To establish Article III standing, a plaintiff must show:  (1) 'injury in fact – an invasion of a legally protected property interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) 'a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court' and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Drake v. Obama*, 664 F.3d 774, 779 (9th Cir. 2011) (quoting *Lujan*, 504 U.S. at 560-61), *cert. denied sub. nom Keyes v. Obama*, 132 S. Ct. 2748 (2012).

"Moreover, a litigant's interest cannot be based on the 'generalized interest of all citizens in constitutional governance.'" *Drake*, 664 F.3d at 774 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974)).  "[A] plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and

15

tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74. "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

The Supreme Court has consistently refused to entertain suits based on generalized claims of constitutional ineligibility for public office. *See, e.g., Ex parte Levitt*, 302 U.S. 633, 637 (1937) (per curiam) (holding that a citizen lacked standing to challenge the appointment of Hugo Black to the Supreme Court under the Constitution's ineligibility Clause, art. 1, § 6, cl. 2); *Schlesinger*, 418 U.S. at 220-21 (holding that an anti-war group did not have standing to invoke the Incompatibility Clause, art. I, § 6, cl. 2, to have members of Congress stricken from the Army Forces Reserve List); *see also Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam)

16

(reaffirming the "lengthy pedigree" of the Court's "refusal to serve as a forum for generalized grievances" in dismissing a constitutional challenge to a Colorado constitutional provision limiting the state's congressional redistricting to once per census); *United States v. Richardson*, 418 U.S. 166, 179 (1974) (holding that a taxpayer did not have standing to obtain information about the expenditures of the Central Intelligence Agency under the Constitution's Accounts Clause, art. I, § 9, cl. 7); *Fairchild v. Hughes*, 258 U.S. 126, 129-130 (1922) (dismissing for lack of standing a suit challenging the propriety of the process by which the Nineteenth Amendment was ratified on the ground that "Plaintiff has [asserted] only the right, possessed by every citizen, to require that the government be administered according to law and that the public moneys be not wasted").

This Court has similarly concluded that a plaintiff lacked standing as a voter to challenge President Obama's eligibility to run for the Office of the President in 2008 because he "has no greater stake in the lawsuit than any other United States citizen" and "[t]he harm he alleges is therefore too generalized to confer standing."

17

*Drake*, 664 F.3d at 782 (citing *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009) (holding that the plaintiff's status as a voter in the 2008 election did not give him standing to challenge Barack Obama's eligibility for office)).

Lower courts, likewise, have uniformly dismissed challenges to the qualifications of a candidate for President of the United States for lack of standing.  *See, e.g., Sibley v. Alexander*, 916 F. Supp. 2d 58, 60-62 (D.D.C. 2013) (holding that neither plaintiff's status as a voter or a write-in candidate for President was sufficient to confer Article III standing to sue in an action challenging the President's eligibility for the Office of the President); *Sibley v. Obama*, No. 12-cv-1832, 2012 WL 6625813 (D.D.C. Dec. 19, 2012), *aff'd*, 522 Fed. App'x 2 (D.C. Cir. 2013); *Kercher v. Obama*, 669 F. Supp. 2d 477, 483 (D.N.J. 2009) (dismissing for lack of standing a challenge to the President's eligibility for public office because "the injury, if any, suffered by Plaintiffs is one that would be shared by all the American people" and "this generalized harm is not sufficient to establish standing under Article III"), *aff'd*, 612 F.3d 204 (3d Cir. 2010) (dismissing appeal as frivolous); *Berg v. Obama*, 574 F. Supp. 2d 509,

518 (E.D. Pa. 2008) (dismissing for lack of standing an action challenging the President's eligibility for office because "[t]he alleged harm to voters stemming from a presidential candidate's failure to satisfy the eligibility requirements of the Natural Born Citizen Clause is not concrete or particularized enough to constitute an injury in fact sufficient to satisfy Article III standing"), *aff'd*, 586 F.3d 234, 239 (3d Cir. 2009); *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008) (dismissing for lack of standing a claim that Senator John McCain was not eligible to run for President because the alleged ineligibility, even if true, "would adversely affect only the generalized interest of all citizens in constitutional governance, and that is an abstract injury") (internal quotation marks omitted); *Jones v. Bush*, 122 F. Supp. 2d 713, 717 (N.D. Tex. 2000) (dismissing for lack of standing a challenge to the eligibility of George W. Bush and Richard Cheney for President and Vice-President because "plaintiffs conspicuously fail to demonstrate how they, as opposed to the general voting population, will feel its effects"), *aff'd without opinion*, 244 F.3d 134 (5th Cir. 2000); *Riethmiller v. Electors for New Jersey*, No. 12-6109-JBS-KMW, 2013 WL 1501868, at *3 (D.N.J. Apr. 11,

19

2013) (stating that plaintiff lacked standing to challenge President Obama's eligibility for office because the relief she sought would not benefit her more than it does the public at large); *Annamarie ? Last Name Uncertain v. Electors for Kentucky*, No. 3:12-cv-602-H, 2012 WL 5398565, at *2 (W.D. Ky. Nov. 5, 2012) ("Plaintiff lacks standing to challenge Obama's candidacy and eligibility to be on the ballot as she has suffered no injury particularized to her"); *Cohen v. Obama*, No. 08-2150, 2008 WL 5191864, *1 (D.D.C. Dec. 11, 2008) (dismissing for lack of standing an action seeking to enjoin President Obama from taking the oath of office in 2008 because the claim presented only a generalized grievance), *aff'd per curiam*, 332 F. App'x 640 (D.C. Cir. 2009).

In this case, plaintiffs-appellants' claim that President Obama is not a natural born citizen raises "only a generally available grievance about government -- claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573-74.

Accordingly, plaintiffs-appellants do not state an Article III case or controversy. *See id.*

It is true that this Court has recognized the notion of "competitive standing," which this Court noted has been described as follows: "a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." *Drake*, 664 F.3d at 782-83 (quoting *Hollander*, 566 F. Supp. 2d at 68). However, plaintiffs-appellants cannot gain standing under the competitive standing theory for two reasons. First, the 2012 General Election was over when plaintiffs-appellants filed their Amended Complaint. Accordingly, any competitive interest that Edward Noonan, Thomas Gregory MacLeran, and Keith Judd (identified in the Amended Complaint as "candidates for the U.S. President") could conceivably have had in running against an eligible candidate in the election had lapsed. Similarly, any interest that James Grinols and Robert Odden (identified in the Amended Complaint as electors) could conceivably

have had – derived from the competitive interest of their preferred

candidates – was similarly extinguished.

This same point was made by this Court in *Drake* with respect

to the 2008 election:

> Once the 2008 election was over and the President sworn
> in, Keyes, Drake, and Lightfoot were no longer
> 'candidates' for the 2008 general election. Moreover, they
> have not alleged any interest in running against
> President Obama in the future. Therefore, none of the
> plaintiffs could claim that they would be injured by the
> 'potential loss of an election.' *Owen*, 640 F.2d at 1132.
> Plaintiffs' competitive interest in running against a
> qualified candidate had lapsed. Similarly, Robinson's
> interest as an elector – derived from the competitive
> interest of his preferred candidates – was extinguished by
> the time the complaint was filed.

*Drake*, 664 F.3d at 784 (footnote omitted).

Second, the competitive standing theory cannot reasonably be

applied in this case because none of the plaintiffs-appellants was a

plausible "competitor" to President Obama in the 2012 Election.

Although Edward Noonan alleged that he was the winner of the

American Independent Party primary, an individual by the name of

Thomas Hoefling was actually nominated as the American

Independent Party's candidate for President, not Mr. Noonan.[1]  The Amended Complaint does not allege which political party Thomas Gregory MacLeran was affiliated with or whether he was on the ballot in a single state.  Although the Amended Complaint alleges that Keith Judd received forty percent of the vote in the West Virginia Democratic Party Primary, it neglects to disclose that Judd is currently serving a prison sentence at the Federal Correctional Institution in Texarkana, Texas, and is not scheduled for release until October 14, 2014, which obviously would have made it difficult for Judd to perform his duties as President of the United States.[2] The Amended Complaint also contains no allegations that Judd campaigned anywhere in the country, that he appeared on any other state's primary ballot, that he appeared on any state's 2012 general presidential election ballot, or that he had any plausible chance of being elected President while serving time in a penitentiary.

None of these individuals could plausibly contend that he would have been elected President if Barack Obama had not participated in

---

[1] *See* http://www.sos.ca.gov/elections/sov/2012-general/sov-complete.pdf at 7.

[2] *See* http://www.bop.gov.iloc2/LocateInmate.jsp.

the election process.  As the United States Court of Appeals for the

District of Columbia recently held in affirming the dismissal of a

similar challenge to the qualifications of the President brought by a

write-in candidate for President:

> As the district court said, "self-declaration as a write-in candidate" is insufficient, *Sibley v. Obama*, 866 F. Supp. 2d 17, 20 (D.D.C. 2012), – both because if it were sufficient any citizen could obtain standing (in violation of Article III of the U.S. Constitution) by merely "self-declaring," and because the writ [of *quo warranto*] is only available for someone who would obtain the office if the incumbent were ousted, *see Newman*, 238 U.S. at 544, 547, 550-51.

*Sibley v. Obama*, No. 12-5198, 2012 WL 6603088, at *1 (D.C. Cir.

Dec. 6, 2012) (per curiam), *cert. denied*, 133 S. Ct. 1263 (2013); *see*

*also Sibley v. Alexander*, 916 F. Supp. 2d 58, 61 (D.D.C. 2013)

("Sibley's status as a write-in candidate is insufficient to confer

standing because there is no evidence, or authority, that Sibley

points to which would indicate that the electors would otherwise

have cast their votes for him.").

Moreover, the fact that James Grinols and Robert Odden are

alleged to have been electors does not transform their generalized

grievance into an Article III injury via the competitive standing

24

theory.  The harm that they allege is only speculative and derivative of their favored candidates (who are not identified in the Amended Complaint).  As the United States District Court for the Northern District of California held in an action brought by an elector challenging the eligibility of John McCain to be President:

> "[P]laintiff has no standing to challenge Senator McCain's qualifications.  Plaintiff is a mere candidate hoping to become a California elector pledged to an obscure third-party candidate whose presidential prospects are theoretical at best.  Plaintiff has, therefore, no greater stake in the matter than a taxpayer or voter.  *Hollander v. McCain*, 2008 WL 2853250 (D.N.H. 2008).  Neither plaintiff nor general election voters favoring the same candidate as plaintiff have in any way been prevented from supporting their preferred candidate.  If plaintiff alleges that his prospects of becoming an elector would be enhanced absent Senator McCain's candidacy, any such claim would be wholly speculative.  Moreover, plaintiff himself is not a candidate in competition with John McCain – the harm plaintiff alleges is not only speculative but also merely derivative of the prospects of his favored obscure candidate.  *Gottlieb v. Federal Election Commission*, 143 F.3d 618, 622 (D.C. Cir. 1998).  His claimed injury is neither particularized nor actual and imminent.  Plaintiff lacks standing to bring this lawsuit.

*Robinson v. Bowen*, 567 F. Supp. 2d 1144, 1146 (N.D. Cal. 2008).

Because the claim that President Obama is not a natural born citizen raises "only a generally available grievance about

government," plaintiffs-appellants lacked standing to sue under Article III of the Constitution.  *See Lujan*, 504 U.S. at 573-74.

## C.  Plaintiffs- Appellants' Claims Were Moot

The district court also properly concluded that plaintiffs-appellants' claims were moot.

"The exercise of judicial power under [Article] III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974).  A case is moot when "'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).

"Where the activities sought to be enjoined have already occurred, and . . . courts cannot undo what has already been done, the action is moot." *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978).  When a case becomes moot, federal

courts cease to have jurisdiction over it.  *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990).

The district court properly determined that plaintiffs-appellants' claims for injunctive relief were moot because all of the actions that plaintiffs-appellants sought to enjoin had already occurred by the time they filed their Amended Complaint.  First, Governor Brown had prepared and delivered the Certificates of Attainment, which he was required to do on or before December 17, 2012.  *See* 3 U.S.C. § 6.  Second, the Electoral College had convened and the electors had cast their votes for President.  *See* 3 U.S.C. §§ 7-8 (stating that the electors of each state must meet at the place designated by that state on the first Monday after the second Wednesday in December to cast their votes for President of the United States).  Third, the Electoral College had delivered their sealed votes to the President of the Senate.  *See* 3 U.S.C. §§ 9-11 (directing the electors to send their sealed votes to the President of the Senate on the day after their meeting on December 17, 2012).  Fourth, Congress had counted the electoral votes at a joint session of Congress on January 4, 2013, and had declared President Obama as

the winner of the Presidential Election. *See* Pub. L. No. 112-228, 126 Stat. 1610 (2012); 159 Cong. Rec. H49-50 (daily ed. Jan. 4, 2013). Finally, President Obama had been inaugurated and had begun his second term as President of the United States on January 20, 2013. *See* U.S. Const. amend. XX, § 1; Megan Slack, *President Obama and Vice President Biden Take the Oath of Office*, The White House Blog (Jan. 20, 2013, at 1:00 p.m.), http://www.whitehouse.gov/blog/2013/01/20/president-obama-and-vice-president-biden-take-oath-office.

The district court also properly concluded that plaintiffs-appellants' claim for declaratory relief -- that President Obama was not eligible to run as "a candidate for office" for President – was moot because President Obama was no longer a candidate for office when the Amended Complaint was filed. Instead, he was the sitting President of the United States serving a second term. Plaintiffs-Appellants only sued Barack Obama "as a candidate for the U.S. President." FED-SER 113; *see also* Plaintiffs-Appellants' Opening Br. at 23 ("The case at hand deals with actions of Obama before getting into office"). As articulated by the District Court:

Thus, even were the Court to issue the declaratory judgment requested by Plaintiffs, that ruling would have no effect on the parties' legal relationship and would amount to nothing more than an advisory opinion, which the Court is constitutionally prohibited from issuing.

. . . .

Since President Obama is currently serving his second term as President of the United States, he is constitutionally precluded from serving as President again. Accordingly, even were the Court to declare that President Obama is ineligible to serve as the American President, such a declaration will have no practical effect on the parties' future relationship.

FED-SER 23; *see also Paige v. Vermont*, 2013 Vt. 105 (2013) (concluding that plaintiff's request for a declaration that Barack Obama is not a natural born citizen was moot because Mr. Obama was already the President of the United States and was unable to seek re-election); *see also Newdow v. Bush*, 391 F. Supp. 2d 95, 107-08 (D.D.C. 2005) (stating that a request for declaratory judgment does not alter the mootness analysis "because the jurisdictional prerequisite of a 'case or controversy' applies with equal force to actions seeking declaratory relief") (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

The fact that plaintiffs-appellants sought purely an advisory opinion is made clear in plaintiffs-appellants' Opening Brief, where they state that their goal is to present "a grievance" to Congress, along with a declaratory judgment from the district court that Barack Obama is not eligible to be President, asking Congress "to impeach Obama and remove him from office."  Plaintiffs-Appellants' Opening Br. at 26.

Finally, although plaintiffs-appellants contend that their claim for declaratory relief is not moot because the issue "is capable of repetition yet evading review," this contention is meritless because the President is barred by the Constitution from seeking a third term in office. *See* U.S. Const. amend. XXII, § 1 (limiting a President to two 4-year terms in office).

The district court properly dismissed plaintiffs-appellants' claims as moot because the issues presented were no longer live and plaintiffs-appellants lacked a legally cognizable interest in the outcome.  *See Nw. Envtl. Def. Ctr.*, 849 F.2d at 1244-45.

## D.    Plaintiffs-Appellants' Claims Were Barred by the Political Question Doctrine

The district court also properly concluded that plaintiffs-appellants' claims were barred by the political question doctrine.

The political question doctrine originated in Chief Justice Marshall's observation that "[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). "The Supreme Court has since explained that '[t]he nonjusticiability of a political question is primarily a function of the separation of powers.'" *Corrie v. Caterpillar*, 503 F.3d 974, 980 (9th Cir. 2007) (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)). The presence of a political question deprives the court of subject matter jurisdiction. *See id.* at 980-82; *see also No GWEN Alliance of Lane County, Inc. v. Aldridge*, 855 F.2d 1380, 1382 (9th Cir. 1988) ("[T]he presence of a political question precludes a federal court, under Article III of the Constitution, from hearing or deciding the case presented.").

In *Baker*, the Court set out a list of "formulations" that help identify whether a political question is raised in a particular case:

31

It is apparent that several formulations which vary
slightly according to the settings in which the questions
arise may describe a political question, although each has
one or more elements which identify it as essentially a
function of the separation of powers.  Prominent on the
surface of any case held to involve a political question is
found a textually demonstrable constitutional
commitment of the issue to a coordinate political
department; or a lack of judicially discoverable and
manageable standards for resolving it; or the
impossibility of deciding without an initial policy
determination of a kind clearly for nonjudicial discretion;
or the impossibility of a court's undertaking independent
resolution without expressing lack of the respect due
coordinate branches of government; or an unusual need
for unquestioning adherence to a political decision already
made; or the potentiality of embarrassment from
multifarious pronouncements by various departments on
one question.

*Baker*, 369 U.S. at 217.

The first formulation – whether there is a "textually

demonstrable constitutional commitment of the issue to a coordinate

political department" – is the most relevant to this case.  Article II,

section 1, clause 5 of the United States Constitution, provides:  "No

Person except a natural born Citizen, or a Citizen of the United

States, at the time of the Adoption of this Constitution, shall be

eligible to the Office of President."

32

Although the "natural born citizen" clause does not designate which branch should evaluate a candidate's eligibility for the Presidency, the Constitution and 3 U.S.C. § 15 make it clear that such a determination should be made exclusively by Congress. The popular national vote does not determine the winner of a Presidential race. Instead, the Constitution created the Electoral College to elect the President and Vice-President of the United States. Under Article II, section 1, clause 2 of the Constitution, the voters of each state choose electors on Election Day to serve in the Electoral College. The Twelfth Amendment sets out the manner by which the electors from each state elect the President:

> The Electors shall meet in their respective states and vote by ballot for President and Vice-President . . . and they shall . . . transmit [their votes] sealed to the seat of the government of the United States, directed to the President of the Senate;–The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted.

U.S. Const. amend. XII.

3 U.S.C. § 15 provides further details about the process of counting electoral votes in Congress. It directs that electoral votes are counted at a joint session of the Senate and the House of

Representatives, at which the President of the Senate is the presiding officer. *See* 3 U.S.C. § 15. "It directs that designated individuals shall open, count and record the electoral votes, and then present the results to the President of the Senate, who shall then 'announce the state of the vote.'" *Robinson*, 567 F. Supp. 2d at 1147 (quoting 3 U.S.C. § 15).

3 U.S.C. § 15 also provides a procedure for objections to the electoral votes:

> [T]he President of the Senate shall call for objections, if any. Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received. When all objections so made . . . shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision.

3 U.S.C. § 15.

> The Twentieth Amendment further provides:

> [I]f the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring

who shall then act as President, or the manner in which one who is to act shall be elected, and such person shall act accordingly until a President or Vice President shall have qualified.

U.S. Const. amend. XX, § 3.

In a nutshell, the Twelfth Amendment and 3 U.S.C. § 15 provide a procedure for counting electoral votes and the handling of any challenge to a Presidential candidate by Congress, and the Twentieth Amendment sets out guidance as to how to proceed if a President elect shall have failed to qualify.  *See Robinson*, 567 F. Supp. 2d at 1147.  Under these provisions, Congress alone has the responsibility to count electoral votes and to decide which electoral votes not to count.  Any objections to the counting of the electoral votes – including any objection based on the Natural Born Citizen clause – can be determined by Congress at the joint session prescribed by the Twelfth Amendment.[3]  As one court has stated in

---

[3] Congress has historically exercised its right not to count certain electoral votes.  For example, in 1872, Congress declined to count the votes of three Georgia electors for Democratic candidate Horace Greeley.  *See* Beverly L. Ross & William Josephson, *The Electoral College and the Popular Vote*, 12 J.L. & Pol. 665, 706 (1996).  Horace Greeley had died before the electors met to vote, and therefore Congress refused to count the three Georgia votes on the ground that they were not cast for a person.  *See id.* at 706-07 (noting

rejecting a "Natural Born Citizen" challenge to Senator McCain's

candidacy:

> Issues regarding qualifications for president are quintessentially suited to the foregoing process. Arguments concerning qualifications or lack thereof can be laid before the voting public before the election and, once the election is over, can be raised as objections as the electoral votes are counted in Congress. The members of the Senate and the House of Representatives are well qualified to adjudicate any objections to ballots for allegedly unqualified candidates.

*Robinson*, 567 F. Supp. 2d at 1147.

The California Court of Appeal, in rejecting a "Natural Born

Citizen" challenge to President Obama's eligibility for office,

similarly stated:

> Any investigation of eligibility is best left to each party, which presumably will conduct the appropriate background check or risk that its nominee's election will be derailed by an objection in Congress, which is authorized to entertain and resolve the validity of objections following the submission of electoral votes.

*Keyes v. Bowen*, 117 Cal. Rptr. 3d 207, 209 (Cal. Ct. App. 2010).

---

that members of Congress could well decide that they have an implicit responsibility under the Constitution not to count electoral votes for individuals who are not natural born citizens of the United States, are under the age of 35, or otherwise are not qualified for office under the Constitution).

The determination by Congress of electoral vote objections, like the determination of the Qualifications of Members to Congress, is nonjusticiable. *See Nixon v. United States*, 506 U.S. 224, 237-38 (1993) (stating that Senate-tried impeachments are nonjusticiable because "no separate provision of the Constitution" contains an "identifiable textual limit" upon the Senate's authority to conduct such trials); *see also Barry v. United States ex rel. Cunningham*, 279 U.S. 597 (1929) (rejecting *habeas corpus* challenge to Senate procedures for judging validity of election); *Metzenbaum v. FERC*, 675 F.2d 1282, 1287-88 (D.C. Cir. 1982) (per curiam) (holding that a challenge to House procedure regarding consideration of resolution was nonjusticiable); *Consumers Union of United States, Inc. v. Periodical Correspondents' Assoc.*, 515 F.2d 1341 (D.C. Cir. 1975) (holding that a challenge to rejection of congressional press gallery application was nonjusticiable).

Because the Constitution assigns to Congress alone the responsibility to count electoral votes and to decide which electoral votes not to count, the district court properly concluded that

plaintiffs-appellants' claims were barred by the political question

doctrine.

### E. Plaintiffs-Appellants' Claims Against Congress Were Barred by the Speech or Debate Clause

The district court also properly concluded that plaintiffs-

appellants' claims against Congress were barred by the Speech or

Debate Clause of the United States Constitution.

The Speech or Debate Clause provides:

> The Senators and Representatives shall . . . in all Cases except Treason, Felony, and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; *and for any Speech or Debate in either House, they shall not be questioned in any other Place.*

U.S. Const. art. 1, § 6, cl. 1 (emphasis added).

"The Speech or Debate Clause was designed to assure a co-

equal branch of the government wide freedom of speech, debate, and

deliberation." *Gravel v. United States*, 408 U.S. 606, 617 (1972).  It

includes "'within its reach anything generally done in a session of

[Congress] by one of its members in relation to the business before

it.'" *United States v. Renzi*, 651 F.3d 1012, 1021 (9th Cir. 2011)

(quoting *Gravel*, 408 U.S. at 624).  "Without exception, our cases

38

have read the Speech or Debate Clause broadly to effectuate its

purposes." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501

(1975). "The purpose of the Clause is to insure that the legislative

function the Constitution allocates to Congress may be performed

independently." *Id.* at 502.

To determine whether the Speech or Debate Clause applies, a

court must ask whether the claims presented fall "within the 'sphere

of legitimate legislative activity.'" *Gravel*, 408 U.S. at 625 (quoting

*Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). Legitimate

legislative activity encompasses "anything 'generally done in a

session of the House by one of its members in relation to the business

before it.'" *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (quoting

*Kilbourn*, 103 U.S. at 204). The Clause precludes inquiry into "the

deliberative and communicative processes by which Members

participate in committee and House proceedings with respect to the

consideration and passage or rejection of proposed legislation *or with

respect to other matters which the Constitution places within the

jurisdiction of either House*." *Gravel*, 408 U.S. at 625 (emphasis

added). "[O]nce it is determined that Members are acting within the

'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503 (citing *McMillan*, 412 U.S. at 314).

Here, the Twelfth Amendment and 3 U.S.C. § 15 assign to Congress the responsibility for counting electoral votes and resolving any objections – which would include any objections based on the Natural Born Citizen Clause.  This responsibility is unquestionably a "matter[] which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625.  Because electoral vote counting is within the "legitimate legislative sphere," the Speech or Debate Clause is an absolute bar to interference by the judiciary. *See Eastland*, 421 U.S. at 503.

Nor is there any doubt that the protections of the Speech or Debate Clause must be afforded to the Vice President where, in a joint session of Congress, he presides as "[t]he President of the Senate" to "open all the certificates."  U.S. Const. amend. XII.  Where, as here, a legislative function is challenged, the immunity attaches irrespective of any other roles performed by the challenged party. *See Supreme Court of Virginia v. Consumers Union of U.S.,*

*Inc.*, 446 U.S. 719, 731-34 (1980) (holding that state supreme court justices, even though members of the judiciary, were entitled to legislative immunity in an action challenging the promulgation of attorney discipline rules); *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) (holding that city mayor, even though a member of the executive department of municipal government, was entitled to common law legislative immunity for performing legislative act of formulating budget and in signing ordinance so providing).

Plaintiffs-Appellants contend that "Judge England did not quote any case where  Speech and Debate clause was used to shield a Candidate for office, U.S. Attorneys and the judge who have hidden evidence of serious crimes from the U.S. Congress on the issue of national importance."  Plaintiffs-Appellants' Opening Br. at 50-51. While this contention is true, plaintiffs-appellants completely fail to address the point that the Twelfth Amendment and 3 U.S.C. § 15 assign to Congress the responsibility for counting electoral votes and resolving any objections (including any objections based on the Natural Born Citizen Clause) and that this responsibility is

unquestionably within the "legitimate legislative sphere." *Gravel*, 408 U.S. at 625.

Because plaintiffs-appellants' attempt to enjoin Congress and the Vice President (as President of the Senate) from fulfilling their constitutional function of counting of electoral votes was nothing more than an attempt to interfere with the legislative process, the district court also properly concluded that the Speech or Debate Clause barred plaintiffs-appellants' claims against Congress and the Vice President.

## F.    Plaintiffs-Appellants' Miscellaneous Arguments Lack Merit

### 1.    The District Court Did Not Ignore "The Precedents"

Plaintiffs-Appellants contend the district court refused to consider three precedents which, in their view, "showed that . . . eligibility for President is a non-judicial question and previously courts ruled on the merits of legitimacy for President." Plaintiffs-Appellants' Opening Br. at 15-18. Plaintiffs-Appellants are mistaken.

#### a.    *Fulani v. Hogsett*

Plaintiffs-Appellants' reliance on *Fulani v. Hogsett*, 917 F.2d 1028 (7th Cir. 1991), is misplaced. In *Fulani*, the Seventh Circuit

42

concluded that plaintiffs, candidates for President and Vice President of the United States on behalf of the New Alliance Party in 1988, had standing to bring an action under 42 U.S.C. § 1983 alleging that Indiana election officials had violated their rights under the Equal Protection Clause when they allowed both the Democratic and Republican presidential candidates to appear on the ballot despite the fact that the Indiana Secretary of State had failed to properly certify the Democratic and Republican candidates by a required deadline. *See id.* at 1029. Relying on the doctrine of "competitive standing," the court concluded that plaintiffs had standing because, with the addition of the Republican and Democratic candidates on the ballot, "New Alliance faced increased competition which no doubt required additional campaigning and outlays of funds." *Id.* at 1030. The court noted that "[w]ithout the Republicans and Democrats on the ballot, New Alliance would have gained additional press exposure and could have conceivably won the Indiana election, no small boon for a relatively obscure party that hoped to establish a national presence." *Id.*

Unlike the plaintiffs in *Fulani*, who appeared on the presidential ballot in all fifty states and could have conceivably won the Indiana election but for the presence of the Republican and Democratic candidates on the ballot, *see id.* at 1029, the presidential candidates in the present action (Edward Noonan, Thomas MacLeran, and Keith Judd) do not allege that they were on a single state's ballot in the general election, much less on the ballot in enough states in the general election to hope that they could gain the requisite 270 electoral votes to win the Presidency. Accordingly, the *Fulani* decision is of no assistance to plaintiffs-appellants.

> b. *Cleaver v. Jordan*

Plaintiffs-Appellants contend that, in *Cleaver v. Jordan*, former California Secretary of State Frank Jordan fulfilled his duty as Secretary of State by refusing to place Eldridge Cleaver's name on the ballot because he was not 35 years old (the minimum age to be a Presidential candidate). Plaintiffs-Appellants' Opening Br. at 15-16. They further contend that Cleaver's challenge to the Secretary of State's action was denied by the California Superior Court; that the California Supreme Court ruled against Cleaver; and that the United

States Supreme Court denied Cleaver's petition for writ of certioriari. *Id.*

Plaintiffs-Appellants have failed to provide a citation for either the California Superior Court decision or the California Supreme Court opinion.  The United States Supreme Court denied a petition for writ of certiorari, *see Cleaver v. Jordan*, 393 U.S. 810 (1968), but the denial does not contain any discussion of the facts of the case. Assuming, for purposes of argument, that plaintiffs-appellants have accurately summarized the facts and law, *Cleaver* does not provide any aid for plaintiffs-appellants.  The fact that a California Superior Court judge denied a candidate's challenge to the California Secretary of State's refusal to place his name on the ballot says nothing about a district court's authority to determine a Presidential candidate's eligibility to run for office in the first instance.

> c.    *Peace and Freedom Party v. Bowen*

In *Peace & Freedom Party v. Bowen*, 912 F. Supp. 2d 905 (E.D. Cal. 2012), the district court dismissed an action filed by the Peace and Freedom Party and its candidate for President, Peta Lindsey, alleging that the California Secretary of State violated their rights

under the First, Fourteenth, and Twentieth Amendments by failing to list the twenty-seven-year-old Lindsey on the presidential primary ballot for the Peace and Freedom Party. Plaintiffs-Appellants' reliance on *Peace and Freedom Party* is misplaced because the fact that the district court concluded that state election officials are not limited by the Constitution from excluding indisputably ineligible candidates from appearing on the ballot says nothing about a district court's ability to determine a candidate's eligibility to run for office in the first instance. *Cf. Keyes v. Bowen*, 117 Cal. Rptr. 3d 207, 215 (Cal. Ct. App. 2010) ("[T]he fact that former Secretary of State Jordan excluded a candidate who indisputably did not meet the eligibility requirements does not demonstrate that the Secretary of State has a clear and present ministerial duty to investigate and determine if candidates are qualified before following the statutory mandate to place their names on the general election ballot.").

## 2. Representation of the Electoral College and Congress

Plaintiffs-Appellants contend the district court erred by allowing the U.S. Attorney's Office to file pleadings on behalf of Congress and the Electoral College in the underlying proceeding

46

because the U.S. Attorney's Office "never got any indication whether members of the U.S. Congress and the Electoral College wish to oppose the TRO or whether they were willing to postpone the confirmation of Obama pending resolution of the court hearings and pending adjudication of whether Obama is eligible."  Plaintiffs-Appellants' Opening Br. at 18-19.  This contention has no bearing on the district court's dismissal of plaintiffs-appellants' action but, in any event, it lacks merit.

With respect to the Electoral College, as the government has explained in both its opposition to plaintiffs-appellants' motion for a temporary restraining order and in its motion to dismiss plaintiffs-appellants' action, the "Electoral College" is not an entity subject to suit.  Rather, it is a term used to refer collectively to the individual electors chosen by each state and the District of Columbia.  *See* Art. II, § 1, cl. 2 ("Each State shall appoint . . . a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress").  "The electors are nominated and appointed in each state in the manner directed by the state legislature."  *Hollman v. United States Electoral College*, No.

47

08-5244, 2009 WL 1114146, at *1 (W.D. Ark. Apr. 24, 2009).  In

accordance with the procedures governed by the Twelfth Amendment

to the United States Constitution, the electors vote for President and

Vice President in their home states, not in a common assembly.  *See*

*Hollman*, 2009 WL 1114146, at *1.  The electors "are not officers or

agents of the federal government."  *Burroughs v. United States*, 290

U.S. 534, 545 (1934).  "The Electoral College itself is not an agency or

person subject to suit; instead each of its members must be subject to

the jurisdiction of the court."  *Hollman*, 2009 WL 1114146, at *1.

       With respect to plaintiffs-appellants' claim that the U.S.

Attorney's Office had an obligation to poll each Member of Congress

and obtain their individual consent to file an opposition to the motion

for a temporary restraining order and a motion to dismiss, this claim

fails for various reasons, including that plaintiffs-appellants named

"U.S. Congress" in their action, not individual members of Congress.

       3.     The District Court's Authority to Issue Declaratory Relief

       Plaintiffs concede that impeachment is the prerogative of

Congress, but argue that the district court had authority to issue a

declaration "dealing with the legitimacy of a candidate for presidency

48

. . . ." Plaintiffs-Appellants' Opening Br. at 22.  However, none of the cases cited by plaintiffs-appellants supports this argument.

The fact that, prior to his impeachment, a United States District Judge was convicted of perjury before a grand jury, *see United States v. Nixon*, 816 F.2d 1022 (5th Cir. 1987), does not provide any support for the assertion that the district court had jurisdiction to issue a declaration that Barack Obama was not eligible to run for the Office of the President.  Similarly, the fact that the Supreme Court ruled in *Clinton v. Jones*, 520 U.S. 681 (1997), that the doctrine of separation of powers does not require federal courts to stay all private actions against the President until he leaves office, does not support the notion that the district court had jurisdiction to declare that Barack Obama was not eligible to run for the Presidency.  Finally, the fact that the Supreme Court ruled in *United States v. Nixon*, 418 U.S. 683 (1974), that neither the doctrine of separation of powers nor the need for confidentiality of high level communications, without more, can necessarily justify an absolute unqualified presidential privilege of immunity from judicial process, does not provide support for the theory that the district

49

court can issue a declaration that Barack Obama is not eligible to be President.

### 4.    "Part 2" of Amended Complaint

Plaintiffs-Appellants contend the district court erred by rejecting their *ex parte* request to "correct a technical glitch" regarding their Amended Complaint.  According to plaintiffs-appellants, their Amended Complaint consisted of parts 1 and 2 and "[d]ue to technical glitch part 2 did not get uploaded."  Apparently, plaintiffs-appellants did not discover this error until after both the federal and state defendants had filed motions to dismiss the Amended Complaint.  Plaintiffs-Appellants' Opening Br. at 39.

The district court denied plaintiffs-appellants' request to file a correction to their Amended Complaint on the grounds that:  the Amended Complaint that was filed was twenty pages; the court's Order Requesting Joint Status Report (Dist. Ct. Docket No. 6) limited briefs and papers to twenty pages; and that "[a]ny party wishing to file lengthier documents must first seek relief from said page limitation requirement from the Court."  FED-SER 204 (Dist. Ct. Docket No. 96), FED-SER 30.

Plaintiffs-Appellants have not provided this Court (or the district court) with a copy of "part 2" of their Amended Complaint, such that this Court could engage in any meaningful analysis of whether the district court erred by limiting plaintiffs-appellants' Amended Complaint to twenty pages. Plaintiffs-Appellants have also failed to describe the contents of "Part 2" of their Amended Complaint and have neglected to provide any legal argument on why the district court erred by limiting their Amended Complaint to twenty pages. Accordingly, they have waived any argument that the district court erred by denying their request to "correct the error." *See Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923 (9th Cir. 1988) (stating that "it is particularly appropriate to deem an argument waived . . . where the court has 'not been presented with sufficient information or argument to allow an intelligent disposition of the issue.'") (quoting *United States v. White*, 454 F.2d 435, 439 (7th Cir. 1971)). Moreover, because plaintiffs-appellants have failed to explain how or why the alleged exclusion of "Part 2" has caused them any prejudice, any alleged error would be harmless in any event.

51

5.    <u>Plaintiffs-Appellants' Witnesses</u>

Plaintiffs-Appellants contend the district court erred by refusing their request to present witnesses at the hearing on their motion for a temporary restraining order on January 3, 2013. Plaintiffs-Appellants' Opening Br. at 40-45.  This contention lacks merit.

Plaintiffs-Appellants, by their own admission, failed to inform the district court that they wished to present witnesses at the hearing until the day before the hearing and then did so only by sending an email to the judge's courtroom deputy.  Moreover, following the courtroom deputy's receipt of the email request and an initial response from the courtroom deputy, the district court issued an order the same day, limiting the parties to 20 minutes of oral argument.  Plaintiffs-Appellants have failed to cite any authority that they were entitled to present witnesses in a case in which the district court properly concluded that it was barred by the political question doctrine from considering plaintiffs-appellants' claims.

### 6.    Whether Barack Obama Exists as a Legal Entity

Plaintiffs-Appellants contend the district court erred by failing to adjudicate "whether 'Barack Obama' even exists as a legal entity, as a legal name." Plaintiffs-Appellants' Opening Br. at 45. This contention lacks merit because where, as here, the district court lacks subject matter jurisdiction, the court cannot reach the merits of any dispute. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S 83, 94-95 (1998).

### 7.    Plaintiffs-Appellants' Request for Default Judgment

Plaintiffs-Appellants maintain that, by suing the President in his capacity as "Candidate for the U.S. President in 2012," they sued the President in his individual capacity. Plaintiffs-Appellants further contend that the district court erred by refusing to enter a default judgment against the President in his individual capacity for failing to file a responsive pleading to their Complaint within twenty-one days. Plaintiffs-Appellants' Opening Br. at 46-48. This contention lacks merit.

Plaintiffs-Appellants do not directly dispute that they failed to properly serve the President in his individual capacity in compliance

with Fed. R. Civ. P. 4(e).[4]  Instead, they appear to argue that their failure to properly serve the President in his individual capacity should be excused because their process server attempted to serve the President at the White House, but was turned away by the Secret Service.  Plaintiffs-Appellants' Opening Br. at 46-48.  They fail to provide any legal argument as to why this failed attempt constitutes proper service and fail to describe what efforts, if any, were made to effect service in the alternative manners for service that were identified by the district court in its Order.  FED-SER 33-36

Plaintiffs-Appellants also fail to address the fact that, because the district court lacked subject matter jurisdiction over their action, their request for entry of a default judgment against the President in his individual capacity was baseless.  *See, e.g., Schmidt v. Tacoma Police Dep't*, No. C09-5135RBL, 2011 WL 247322, at *1 (W.D. Wash. Jan. 25, 2011) ("Denial of a default judgment is appropriate when plaintiff has no meritorious claims against a defendant, *Lewis v.*

---

[4] The proof of service that plaintiffs-appellants filed in connection with their Complaint reflects that plaintiffs-appellants served only the Department of Justice at 950 Pennsylvania Avenue, N.W., Washington, D.C., and the United States Attorney's Office in Sacramento.  FED-SER 129-132.

*Lynn*, 236 F.3d 766, 767 (5th Cir. 2001), and it is beyond dispute that a default judgment may not be granted where the Court lacks subject matter jurisdiction over the plaintiff's cause of action."); Charles Alan Wright, Arthur R. Miller, *et al.*, 10A Federal Practice and Procedure §§ 2682, 2695 (3d ed.) (noting that default judgment is not appropriate where subject matter jurisdiction is lacking).

8.    5 U.S.C. § 3328

Plaintiffs-Appellants argue that, under 5 U.S.C. § 3328, the President "is not eligible to be a President in the White House or a Janitor in the White House." Plaintiffs-Appellants' Opening Br. at 53. However, 5 U.S.C. § 3328 simply provides that individuals who have not registered for Selective Service are 'ineligible for appointment to a position in an Executive agency." 5 U.S.C. § 3328(a)(2). The President has obviously not been "appointed" to a position in "an Executive agency." Accordingly, 5 U.S.C. § 3328 has no application to this case.

## CONCLUSION

For the reasons stated above, this Court should affirm the

district court's judgment.

Respectfully submitted,

BENJAMIN B. WAGNER
United States Attorney

/s/ Edward A. Olsen
EDWARD A. OLSEN
Assistant United States Attorney

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28.2-6, the United States of America is not aware of any related cases pending in this Court.


DATED: January 29, 2014          BENJAMIN B. WAGNER
                                 United States Attorney

                        By:   */s/ Edward A. Olsen*
                              EDWARD A. OLSEN
                              Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

I certify that the Answering Brief of the Appellee complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the typeface and type style requirements of Fed. R. App. 32(a)(5)-(6), because the brief has been prepared in a proportionately spaced typeface (Century, 14 points) and contains 11,752 words according to the Word Count function in Word 2010.

DATED:  January 29, 2014             /s/ Edward A. Olsen
                                     EDWARD A. OLSEN
                                     Assistant United States Attorney

## CERTIFICATE OF SERVICE

Ninth Circuit Case No.: 13-16359

I hereby certify that on January 29, 2014, I electronically filed the foregoing:

### Answering Brief of the Appellee

with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 */s/Karen James*
KAREN JAMES
U.S. Attorney's Office
Eastern District of California

59